Kevin McInerney (SBN 46941)
kevin@mcinerneylaw.net
1050 N. Hills Blvd., # 61388
Reno, Nevada 89506
Tel: (775) 849-3811
Fax: (775) 624-3589

Melissa Grant (SBN 205633)
melissa.grant@capstonelawyers.com
Jamie Greene (SBN 249355)
jamie.greene@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
bevin.pike@capstonelawyers.com
Orlando Villalba (SBN 232165)
orlando.villalba@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA WATERS, SAMANTHA FERNANDEZ, DESTINEY LOPEZ, and APRIL SWOBODA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALMART INC., a Delaware corporation;<br><br>Defendant. | Case No.:  5:20-cv-05664<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)   Breach of Contract;<br>(2)   Fraudulent Concealment and False Representation.<br><br>**DEMAND FOR JURY TRIAL**<br><br>**RELATED TO CASE NO. 5:09-CV-0339-EJD** |

# TABLE OF CONTENTS

RELATED CASE.................................................................................................... 1

COMPLAINT ........................................................................................................ 1

JURISDICTION AND VENUE ............................................................................ 1

INTRADISTRICT ASSIGNMENT....................................................................... 2

THE PARTIES....................................................................................................... 2

FACTUAL BACKGROUND ................................................................................ 3

    The *Brown* Action. ........................................................................................ 3

    The 2018 Settlement Agreements. .................................................................. 4

    The Judgment and Order Approving the Settlement ....................................... 7

    Walmart's Violation of the Settlement Agreement. ........................................ 8

CLASS ACTION ALLEGATIONS ...................................................................... 8

FIRST CAUSE OF ACTION

Breach of Contract

(As to the Brown and Post-Brown Subclass)....................................................... 11

SECOND CAUSE OF ACTION

Fraudulent Concealment and False Representation

(As to the Post-*Brown* Subclass) ........................................................................ 13

RELIEF REQUESTED ........................................................................................ 15

DEMAND FOR JURY TRIAL ........................................................................... 16

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RELATED CASE**

This action is related to *Nisha Brown, et al. v. Wal-Mart Stores, Inc., et al.*, (Case No. 5:09-cv-03339-EJD) because this action relates directly to the class action judgment entered in the *Brown* action by Judge Edward J. Davila on March 28, 2019. This new action involves many of the same issues, the same Defendant, and many of the same Class Members.

**COMPLAINT**

Plaintiffs Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda, individually and on behalf of all California Walmart store employees similarly situated, complain and seek against WALMART INC. (herein referred to as "Defendant" or "Walmart"):

1.      They seek for themselves and the *Brown* and Post-*Brown* Subclasses in Count One actual compensatory damages for Walmart's breach of written contract, the Settlement Agreement of November 28, 2018, which was incorporated into the Judgment of March 28, 2019. The Settlement Agreement (Doc. No. 288-2) is attached and incorporated by reference as **Exhibit 1**. The Judgment (Doc. No. 302) is attached and incorporated by reference as **Exhibit 2**.

2.      They seek, for themselves and for the Post-*Brown* Subclass, for fraudulent concealment and false representation, compensatory and exemplary or punitive damages in Count Two.

**JURISDICTION AND VENUE**

3.      The Court has subject matter jurisdiction over this action based upon the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d)(2), because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs; in the aggregate, there are more than 100 members of the proposed Class and Subclasses; and at least Plaintiffs are citizens of a state different from the Defendant. Plaintiffs are residents of California and Defendant WALMART INC. is a Delaware corporation with its principal place of business in Arkansas.

4.      Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) because Defendant transacts business in this judicial district and because this District is one where in which a substantial part of the tortious events or omissions giving rise to the Complaint

occurred. Additionally, one of the named Plaintiffs, April Swoboda, was employed by Walmart in this District.

### INTRADISTRICT ASSIGNMENT

5.      Assignment of this case to the San Jose Division of the above-entitled Court is appropriate because a substantial number of the events and transactions at issue occurred in this Division, and because Judge Davila has retained jurisdiction of *Nisha Brown, et al. v. Wal-Mart Stores, Inc., et al.*, (Case No. 5:09-cv-03339-EJD), which forms the basis of some of Plaintiffs' claims.

### THE PARTIES

6.      Plaintiff Barbara Waters is a resident of Compton, California. Plaintiff has worked for Defendant as an hourly, non-exempt Front-End Cashier since approximately January 2020 at the Walmart store in Compton, California.

7.      Plaintiff Samantha Fernandez is a resident of Chula Vista, California. Plaintiff has been employed by Defendant as both an hourly, non-exempt Front-End Cashier and a Customer Service Desk Associate since approximately March 2017 at the Walmart store in Chula Vista, California.

8.      Plaintiff Destiney Lopez is a resident of Fresno, California. Plaintiff has worked for Defendant as an hourly, non-exempt Front-End Cashier from approximately August 2018 to August 2019 at the Walmart store in Fresno, California.

9.      Plaintiff April Swoboda is is a resident of San Bernardino, California. Plaintiff has worked for Defendant twice as an hourly, non-exempt Front-End Cashier. Ms. Swoboda initially worked for Defendant from approximately September 2018 to January 2019 at the Walmart store in Rohnert Park, California and then from approximately March 16, 2020 to May 31, 2020 at the Walmart store in Rialto, California.

10.     Defendant WALMART INC. was and is a Delaware corporation doing business in California with its principal place of business in Bentonville, Arkansas, and was, at all times relevant to this complaint, an employer whose employees are engaged throughout this District and State in commercial transactions throughout this county, the State of California and the

various states of the United States of America. Walmart Inc. previously did business as Wal-Mart Stores, Inc.

## FACTUAL BACKGROUND

**The *Brown* Action.**

11. On June 11, 2009, plaintiff Nisha Brown filed a class action and enforcement action under the California Labor Code's Private Attorneys General Act against Walmart, alleging that the company failed to provide front-end cashiers with suitable seating. The case, entitled *Nisha Brown, et al. v. Wal-Mart Stores, Inc., et al.*, was initially filed in Alameda Superior Court, Case No. RG09457009 (the "*Brown* Action"). Walmart subsequently removed the action to the United States District Court for the Northern District of California Case Number 5:09-cv-03339, and the case was assigned to the Honorable Edward J. Davila.

12. On August 24, 2012, the Court certified the class action on behalf of all persons who were employed by Walmart in the State of California as front-end cashiers from June 11, 2008 onward. Walmart appealed the Court's certification order to the Ninth Circuit. While Walmart's appeal was pending, the Ninth Circuit heard oral argument in two other suitable seating cases, *Kilby v. CVS Pharmacy, Inc.*, No. 12-56130 (9th Cir.) and *Henderson v. JPMorgan Chase Bank, N.A.*, No. 13-56095 (9th Cir.). On or about December 31, 2013, the Ninth Circuit certified questions to the California Supreme Court regarding interpretation of Wage Order 7-2001, §14. As a result, Walmart's appeal in the *Brown* Action was stayed pending a ruling on the certified questions by the California Supreme Court.

13. On April 4, 2016, the California Supreme Court issued a ruling on the certified questions, providing further explanation of employer obligations to provide seating, and providing guidance for determining whether the nature of the work reasonably permits seats. *Kilby v. CVS Pharmacy, Inc.*, 63 Cal.4th 1 (2016).

14. Shortly after the California Supreme Court's decision in *Kilby*, Walmart's appeal in the *Brown* Action was denied by the Ninth Circuit which affirmed the order granting class certification. 651 Fed.App'x. 672 (9th Cir. 2016).

///

CLASS ACTION COMPLAINT

**The 2018 Settlement Agreements.**

15. On or about October 10, 2018, the parties in the *Brown* Action entered into a proposed settlement agreement resolving the litigation in its entirety on a class-wide basis. Walmart would pay $65 million to resolve the lawsuit and would also implement a pilot seating program for its front-end cashiers.

16. On October 24, 2018, the Court heard plaintiffs' motion for preliminary approval of this agreement. At the hearing, Judge Davila expressed concern regarding the vagueness of Walmart's promise to start providing seats to cashiers.

17. Judge Davila noted that the proposed settlement effectively gave Walmart an easy "out" to stop providing their front-end cashiers with seats if it determined that doing so was appropriate in their sole business discretion. Judge Davila cautioned the parties that the public, in viewing the settlement, might see what appears to be a large corporation buying a release of claims from their employees with an illusory promise to provide seats, and encouraged the parties to go back and reach a settlement that would better benefit the public and Walmart's employees. The Court further suggested that should Walmart decide they needed to modify and/or end a seating program, that Walmart should come back to the court and explain its reasons. *See* Transcript of Preliminary Approval, October 24, 2018.

18. On or about November 28, 2018, the parties entered into a new settlement agreement (the "Settlement Agreement"). *See* **Exhibit 1.**

19. The new Settlement Agreement set forth new and quite different terms relating to providing seats. The relevant sections are:

## 5. TERMS OF SETTLEMENT

Subject to the other terms and conditions of this Agreement, and subject to Court approval, Walmart agrees to the following:

5.1 Seating Program

5.1.1 Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, as set forth below.

5.1.2 Within twenty (20) days of the Settlement Effective Date, Walmart will provide notice to current California front-end cashiers of the availability of seats

CLASS ACTION COMPLAINT

for them to use while working at front-end checkstands. Walmart will also provide notice to associates who are either subsequently hired as a California front-end cashiers, or who transfer into the front-end cashier position. Notice(s) provided pursuant to this Section 5.1.2 shall inform cashiers (i) that Walmart provides seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, (ii) how to obtain a seat, (iii) that they will not be retaliated against for requesting or using a seat, and (iv) that, if they use a seat pursuant to this Section 5.1, they will be held to the same performance, productivity and customer service standards and requirements as all other front-end cashiers.

5.1.3 Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands within ninety (90) days from the date notice is provided to current California front-end cashiers pursuant to Section 5.1.2. In the event Walmart needs additional time to meet its obligations, the Parties shall meet and confer in good faith and Class Counsel's agreement to a reasonable request for extension shall not be unreasonably withheld.

5.1.4 Walmart will advise Class Counsel in writing of the following dates: (i) the date that Walmart provides notice to front-end cashiers of the availability of seating in accordance with Section 5.1.2 ("the Initial Notice Date"); and (ii) the date of completion in accordance with Section 5 .1.3.

5.1.5 Walmart's obligation to provide seats to front-end cashiers is an ongoing obligation, provided, however, that if, in the exercise of its good faith business judgment pursuant to applicable California law and based on objective evidence derived from those front-end cashiers who actually use seats at front-end checkstands in California, Walmart determines that the provision of seats: (i) results in increased injuries or accidents to front end cashiers or customers; (ii) unduly interferes with the standing tasks of front-end cashiers; (iii) results in an increase in the frequency of transitioning from sitting to standing which interferes with the work; (iv) negatively impacts the quality and effectiveness of the cashier's overall job performance; or (v) is no longer applicable due to a change in the law, Walmart has the option to stop providing seats to front-end cashiers for their use at the front-end checkstands.

5.1.6 If Walmart elects to stop providing seats in accordance with Section 5.1.5, Walmart will communicate its decision to (a) its California front-end cashiers that seats will no longer be provided for them; (b) Class Counsel; and (c) the LWDA. The notice, which shall include the reasons for Walmart' s decision, shall be provided to Class Counsel and the LWDA at least one hundred (100) days before the termination, and to California front-end cashiers at least fourteen (14) days before the termination. Prior to termination and if requested by Class Counsel, Walmart shall meet and confer in good faith with Class Counsel regarding the reasons for its determination and, if requested by Class Counsel, shall provide Class Counsel with the information/evidence supporting Walmart's determination as set forth in section 5.1.5.

5.1.7. The Parties further agree that notice to Class Counsel under 5.1.6 need only be provided for the first four ( 4) years following the Initial Notice Date, provided, however, that Walmart's obligation to provide notice to Class Counsel after the initial four (4) year period shall continue for a maximum of four ( 4) additional two-year periods thereafter provided that Class Counsel informs Walmart, in writing, that they wish to continue to receive notice by no later than

the anniversary of the Initial Notice Date in the year Walmart's notice obligation to Class Counsel is set to expire.

5.1.8 The Class Representative, on behalf of herself and in her capacity as the representative of the State of California, agrees that Walmart has complied with its seating obligations owed to cashiers at the front end checkout under Section 14 of Wage Order 7-2001, California Labor Code Section 1198 and/or California Labor Code Section 2699 provided that Walmart meets its obligations under Section 5 .1 and limited to such time that Walmart provides seats to California front-end cashiers who choose to use such while working at California Walmart front-end checkstands.

20.  Whereas the earlier version required a cashier to ask for a seat ("…providing seats to California front-end cashiers <u>who express a desire</u> to use such while working at California Walmart front-end cehckstands…") (*See* Doc. 282.2, ¶5.1.2), the second Settlement Agreement required seats to be provided so as to be available to cashiers to use ("…Walmart <u>provides seats to those</u> California front-end cashiers <u>who choose to use them</u>…") (Settlement Agreement, ¶5.1). The new language comported with the Wage Order, the earlier did not. *Green v. Bank of America,* 512 Fed.Appx. 665 (9th Cir. 2013). Thus, the new language was congruent with an employer's affirmative duty under the Wage Order to provide a seat without the employee asking for a seat – Walmart had to provide at or near the checkstands a sufficient number of suitable seats so that any cashier choosing to use one, could take one.

21.  The Settlement Agreement set forth greater details as to the timing for when the seating program would be implemented. Settlement Agreement, §5.1.2. The Settlement Agreement also clarified and narrowed the circumstances under which Walmart could elect to terminate their seating program and stop providing seats to front-end cashiers. *Id.,* §5.1.5. Further, the Settlement Agreement called for Walmart to notify class counsel, and the Labor & Workforce Development Agency 100 days in advance of its decision to terminate the seating program and required a meet-and-confer process with class counsel, at class counsel's option, regarding their decision to terminate. *Id.,* §5.1.6. These additions to the Settlement Agreement were intended, as represented by counsel for the parties, to act as safeguards to ensure Walmart's agreement to provide front-end cashiers with seats did not have "a short shelf-life."

///

///

**The Judgment and Order Approving the Settlement**

22.     On December 6, 2018, the Court entered an order preliminarily approving the Settlement Agreement. Shortly thereafter, settlement notices were mailed to approximately 100,362 Class Members and incorporated by reference. **Exhibit 3.** The class notice referred Class Members to see ¶5.1 if the Agreement.

23.     There were no objections to the settlement filed by Class Members or the Labor & Workforce Development Agency, and on March 28, 2019, the Court entered its Order of Final Approval and Judgment. **Exhibit 2.** The Court's Order recited the consideration underlying the release of claims against Walmart. The Order states:

> In consideration of the Seating Program and Net Settlement Amount provided under the Agreement, and for other good and valuable consideration, each of the Releasing Settlement Class Members and the State of California shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against Walmart in accordance with Section 13 of the Agreement, the terms of which are incorporated herein by reference, shall have covenanted not to sue Walmart with respect to all such Settlement Class Member Released Claims and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Settlement Class Member Released Claim against Walmart.

Judgment, 6:11-19.

24.     Walmart, however, never intended to implement or maintain the Seating Program. This was intentionally concealed from the Court, Class Counsel, the Class, the LWDA, and future cashiers. No one had reason to believe that Walmart would have the brass to ignore a federal court judgment. The settlement had been reached with the aid of a respected mediator and Walmart was represented by a nationally known law firm.

25.     Pursuant to the Settlement Agreement, Walmart had until **May 18, 2019**, to provide notice to all of their front-end cashiers of the availability of seats. Walmart was required to then furnish seats to front-end cashiers within 90 days of the notice to front-end cashiers that seats were going to be made available, or **August 16, 2019**. Section 5.1.3.

26.     However, on July 11, 2019, two attorneys from Greenberg Traurig, Counsel for Walmart, signed and filed with the Court a report that represented: "Defendant further states that it is implementing the Seating Program in accordance with Section 5.1 of the Settlement

7

Agreement. Notice of the Seating Program was provided as required within 20 days of the Settlement Effective Date, *and seats have been made available at all California Walmart retail locations.*" *See* Joint Status Report Regarding Class Action Settlement attached hereto as **Exhibit 4**. (Doc. No. 305 at 2:13-16) (emphasis added).

**Walmart's Violation of the Settlement Agreement**.

27.    A recent survey of a randomized sample of Walmart's California stores showed that a mere fraction of front-end cashiers have actually been provided with seats, with the majority of front-end cashiers still being required to stand during their shifts. In early July 2020, a total of 45 Walmart stores were visited by licensed investigators who were to note the the presence of seats at front-end checkstands. Those stores were also checked for the number of front-end cashiers making use of a seat at their checkstand.

28.    The results of those visits showed that out of approximately 419 traditional front checkout stations (registers) and 199 cashiers working, only 21 seats were observed at or in the vicinity of a checkout stand, and only 6 seated cashiers were observed. At most Walmart stores in California there are self-checkout point of sale registers referred to as "Scan and Go." A group of these scanners, usually 4 to 10, are attended by a cashier who has a traditional register. These visits showed that out of 82 cashiers working at these self-checkouts, only 8 seats were available, and 2 cashiers were seated.

29.    In total, there were only 8 seated cashiers observed out of 281 working cashiers, which is only 2.8%. In the 45 stores, only 29 seats were observed at or near these registers, which is only .64 seats per store on average.

30.    Walmart has violated the Settlement Agreement by failing to provide seats. Moreover, investigation shows that California store managers continue to require that cashiers provide a note from a doctor in order to receive a seat and use that seat. This is not only violation of the Settlement Agreement, but of the California Labor Code.

**CLASS ACTION ALLEGATIONS**

31.    Plaintiffs Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda bring this lawsuit as a class action on behalf of themselves and all others similarly

CLASS ACTION COMPLAINT

situated as members of the proposed Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and/or (C)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

32.     Plaintiffs' proposed Class consists of all those individuals who were employed by Walmart Inc. (formerly Wal-Mart Stores, Inc.) in the position of Front-End Cashier in California at any time between July 11, 2008 and the present. The proposed Class consists of two subclasses:

(a)     The *Brown* Subclass: Consists of the Class certified by Judge Edward J. Davila on August 24, 2012. This included all persons employed between July 11, 2008 and December 6, 2018 as Front-End Cashiers in California.

(b)     The Post-*Brown* Subclass: Consists of all individuals who worked as Front-End Cashiers in California between December 7, 2018 through the date of trial.

33.     Because some cashiers worked during and after the period covered in the *Brown* settlement, they may be members of both the *Brown* and Post-*Brown* Subclasses.

34.     Members of the Class and Subclasses, as described above, will be referred to as "Class Members." Excluded from the Class and Subclasses are:

(a)     Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and

(b)     The Judge to whom this case is assigned and the Judge's staff.

35.     Numerosity: The Class Members are so numerous that joinder of all members would not be feasible and would be impractical. Each Subclass consists of several thousand individuals. The exact membership of the entire Class and Subclasses is unknown to Plaintiffs at this time; however, the class is estimated to be greater than 20,000. The identity of such membership is readily ascertainable by inspection of Defendant's employment and/or hiring records. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

CLASS ACTION COMPLAINT

36.    <u>Commonality</u>: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

    (a)    The correct legal interpretation of Section 5.1.1: "Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands…";

    (b)    Whether the Defendant implemented the Seating Program set forth in Section 5 of the Settlement Agreement of November 28, 2019 and referenced in the Judgment and/or discontinued that Seating Program;

    (c)    Whether the implementation of the Seating Program and its associated notices to the Cashiers and others constituted a material factor in the *Brown* Settlement;

    (d)    Whether the Defendant concealed the fact that it was not implementing the Seating Program from members of the two Subclasses;

    (e)    Whether the Defendant has failed to notify the Cashiers of the Seating Program and whether the Defendant failed to notify the Cashiers, Class Counsel, and the LWDA that it was not implementing or would not be implementing the Seating Program as written;

    (f)    Whether the Defendant has since March 28, 2019 failed to provide its front-end cashiers with suitable seats;

    (g)    Whether Greenberg Traurig's public representation in its Status Report to the Court on July 11, 2019 that Walmart was in compliance with the Judgment was a negligent or intentional misrepresentation; and

    (h)    Whether Walmart managers in California have required front-end cashiers to provide a doctor's note to obtain or use a seat at checkstands.

37.    <u>Typicality</u>: The named Plaintiffs in this action assert claims that are typical of members of both Classes. The named Plaintiffs are current or former Front-End Cashiers who assert claims that the Defendant deceived them and failed to provide them with suitable seats

1   during the applicable statutes of limitations.

2       38.   Adequacy: The Plaintiffs are qualified to adequately protect the interests of the

3   Subclass Members they seek to represent. They have no known conflicts with absent Class

4   Members and their attorneys have explained to them that they must be alert to any future

5   potential conflicts that may arise. Their attorneys are experienced in the representation and

6   prosecution of class actions under Rule 23 and California law. Together, they have served as

7   lead counsel or co-lead counsel in over fifty class actions. They have adequate staff and

8   resources to prosecute this case.

9       39.   Predominance:  The common questions of law and fact that are enumerated in

10  ¶32 [Commonality], predominate over any other individual issues that will or could arise. The

11  claims of fraud, concealment, and breach are class or subclass in breadth. The elements of the

12  Plaintiffs' legal claims and those of the absent Class Members will be established through

13  written documents and are capable of proof through evidence that is common with respect to all

14  members to the Subclasses. For example, surveillance video from the California stores will

15  demonstrate whether or not seats had been provided and whether cashiers were allowed to sit.

16      40.   Superiority: This Complaint alleges fraud by Walmart that consists in large part

17  by concealment of material facts and obligations imposed by Wage Order §14(A). Similarly,

18  the breach of contract alleged arises from a single common document. The Defendant is the

19  largest retailer and employer in the United States, while the putative Class Members are

20  individuals of limited resources who cannot afford to litigate their claims on an individual basis.

21      41.   Certification of a Single Issue: In the alternative, this Court may find it appropriate

22  to certify only a single or a few claims pursuant to Rule 23(C)(4).

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(As to the Brown and Post-Brown Subclass)**

26      42.   Defendant entered into an express contract to benefit Plaintiffs and Class

27  Members, the Settlement Agreement of November 28, 2018. **Exhibit 1.**

28      43.   This contract provided that Walmart was to furnish seats to California front-end

CLASS ACTION COMPLAINT

cashiers who chose to use a seat. The contract also provided that Walmart would provide notice to all current front-end cashiers of the availability of seats for their use. Furthermore, it provided that Walmart would provide such notice on an ongoing basis to later hired front-end cashiers.

44.     The Seating Program set forth in §5.1 of the Settlement Agreement was a critical component of the settlement and securing court approval. Without the value of this injunctive relief Walmart, facing an upcoming trial with massive exposure, would have had to offer far more than $65 million to buy its peace.

45.     In consideration of Defendant's promise to implement the new Seating Program, Plaintiff Kathy Williamson, the new Plaintiffs, Class Members, and the Labor & Workforce Development Agency released their claims against Defendant in accordance with ¶13 of the Settlement Agreement.

46.     Kathy Williamson and other front-end cashiers thereby performed everything that they were required to do under the Settlement Agreement.

47.     The *Brown* Subclass Members were intended beneficiaries under the Settlement Agreement and the Post-*Brown* Subclass Members were intended third party beneficiaries.

48.     Defendant breached, and continues to breach, the express terms of the Settlement Agreement by, among other things:

(a)     Failing to provide front-end cashiers with suitable seats for use while working at front-end checkstands;

(b)     Failing to furnish notice to then current and future front-end cashiers regarding the providing of seats under the Settlement Agreement;

(c)     Imposing additional burdens on front-end cashiers to obtain seats, contrary to the Settlement Agreement, including, but not limited to, requiring that front-end cashiers to produce a doctor's note to obtain a seat;

(d)     Failing to provide an adequate number of suitable seats at the front-end of stores so that cashiers wishing to use a seat would have a suitable seat available;

CLASS ACTION COMPLAINT

(e)    Denying front-end cashiers the use of seats when they requested to use them at front-end checkstands; and

(f)    Failing to provide advance notice to Class Counsel, the Labor & Workforce Development Agency, and the cashiers of prospective changes with respect to and/or termination of the Seating Program.

49.    The aforementioned conduct and omissions by Defendant constitute material unexcused breaches of the Settlement Agreement.

50.    As a result of Defendant's aforementioned conduct and omissions, Plaintiffs and Class Members have suffered harm from the loss of access to and use of a seat while performing their cashier duties and have suffered harm to their physical health and well-being by being forced to stand throughout their shifts.

51.    At the same time Walmart has saved millions of dollars by not implementing the Seating Program.

52.    As a legal and proximate result of Defendant's conduct described herein, Plaintiffs and Class Members have suffered direct and foreseeable damages, in a nature and amount to be proven at the time of trial.

## SECOND CAUSE OF ACTION

### Fraudulent Concealment and False Representation

### (As to the Post-*Brown* Subclass)

53.    At all times Walmart was obligated to provide suitable seating to its California front-end cashiers under Wage Order §14(A) and (B). Walmart and its California store managers were painfully aware of their obligation under this law through earlier litigation. Despite this, Walmart and its store management concealed its obligation, the law, and the Wage Order from its California front-end cashiers.

54.    To the extent that any of Walmart's California employees received actual notice regarding any change in policy, it was overridden by Walmart's California store management's enforcement of historic rules of having their front-end cashiers stand. In addition, Walmart's California store management continued to advise employees that seats would be provided only if

they requested one, a requirement contrary to law. And, in many cases, only when the California front-end cashiers were able to provide a doctor's note explaining that a medical condition existed requiring the use of a seat were seats provided. Thus, Walmart treated the California Wage Order and the Judgment as a nullity and reverted to, if it had ever departed from, its historic policy and practice of requiring store employees to stand.

55.     Walmart concealed, and to this day, continues to conceal from Class Counsel, who represented the *Brown* California front-end cashiers, its noncompliance with the Wage Order and Judgment. Class Counsel in *Brown* were the guardians of the front-end cashiers, but they were misled by written misrepresentations made by Greenberg Traurig, a firm that was acting as attorneys for Walmart.

56.     One example of such was a Status Report that two Greenberg Traurig attorneys signed and filed in the *Brown* action on July 11, 2019. In that report, they wrote: "Defendant further states that it is implementing the Seating Program in accordance with Section 5.1 of the Settlement Agreement. Notice of the Seating Program was provided as required within 20 days of the Settlement Effective Date, and seats have been made available at all California Walmart retail locations." (Doc. No. 305 at 2:13-16)

57.     The concealment and fraudulent misrepresentation by Walmart caused a general belief among Walmart California front-end cashiers that they 1) were not entitled to a use of a seat while performing their checkout duties; and 2) that while on duty, but experiencing a lull in their workflow, the use of a seat nearby.

58.     At all times, the Defendant and its California store management had no reason to believe that its statements to the employees were true or lawful.

59.     The concealment of material facts and law and the misrepresentations prejudiced Walmart's California employees because they did not receive seats and they had to stand. This was a common injury to all Class Members and particularly those employees who were older, pregnant, or had infirmities. Walmart did this to save millions of dollars in compliance and with absolutely no regard for the health, safety, or welfare of its employees. The concealment and misrepresentations were intentional and were made without any regard for the truth and/or law.

1    They were made with the knowledge that discomfort and injury would result to the employees.

2    This constituted despicable conduct and as a result, the Plaintiffs and the Subclass Members are

3    entitled to not only compensatory and special damages, but to exemplary and punitive damages

4    as well.

5          60.    Part of the proof of these allegations lies in the Defendant's store surveillance

6    video footage, which captured how few seats were available and how few seated cashiers existed.

7    The Defendant is notified that all such existing store surveillance tape must be maintained.

8                                    **RELIEF REQUESTED**

9          Plaintiffs, on behalf of themselves and members of the Subclasses, request that the Court

10   enter the following orders and grant the following relief, as follows:

11         (a)     An order certifying the proposed Class and Subclasses, designating Samantha

12   Fernandez, April Swoboda, and Destiney Lopez as named representatives of the *Brown Sub*class

13   and Samantha Fernandez, April Swoboda, Destiney Lopez, and Barbara Waters as the named

14   representative of the Post-*Brown* Subclass;

15         (b)     An order appointing Kevin J. McInerney and Capstone APC as as Class Counsel;

16         (c)     An award of compensatory, special, and general damages according to proof;

17         (d)     An award of exemplary or punitive damages to the Post-*Brown* Subclass;

18         (e)     An award of pre-judgment and post-judgment interest, as provided by law;

19         (f)     Leave to amend this Complaint to conform to the evidence produced at trial;

20         (g)     An award of attorneys' fees and costs; and

21         (h)     Such other relief as may be appropriate under the circumstances.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiffs request a trial by jury of all issues which may be tried by a jury pursuant to federal law.


Dated: August 13, 2020                              By:  /s/ Kevin J. McInerney
                                                          Kevin J. McInerney


Dated: August 13, 2020                                   CAPSTONE LAW APC


                                                    By:  /s/ Melissa Grant
                                                         Melissa Grant
                                                         Bevin Allen Pike
                                                         Orlando Villalba
                                                         Jamie Greene

                                                         *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT