QUYEN L. TA (Bar No. 229956)
qta@kslaw.com
KELLY PERIGOE (Bar No. 268872)
kperigoe@kslaw.com
JEANNE A. FUGATE (Bar No. 236341)
jfugate@kslaw.com
**KING & SPALDING LLP**
101 Second Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Attorneys for Defendant WALMART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BARBARA WATERS, SAMANTHA FERNANDEZ, DESTINEY LOPEZ, and APRIL SWOBODA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC., a Delaware corporation,<br><br>Defendant. | Case No.: 5:20-cv-05664-EJD<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, OR ALTERNATIVELY STAY THE ACTION PENDING A DECISION IN *BROWN*; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Edward J. Davila<br>Hearing Date: November 5, 2020<br>Time: 9:00 a.m.<br>Courtroom: 4 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 5, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose, California, in Courtroom 4 before the Honorable Edward J. Davila, Defendant Walmart Inc, by and through counsel, will and hereby does move this Court to Dismiss the Class Action Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

Walmart Inc.'s Motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Complaint, and the Settlement Agreement incorporated by reference therein, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such written or oral argument that Walmart Inc. may present to the Court.

# TABLE OF CONTENTS

**Page(s)**

I.   STATEMENT OF ISSUES TO BE DECIDED ..................................................1

II.   INTRODUCTION ..........................................................................................1

III.   FACTUAL AND PROCEDURAL BACKGROUND..........................................2

    A.   The *Brown* Class Action and Settlement Agreement ............................2

    B.   Plaintiffs' Allegations of Breach of Settlement Agreement in *Brown* ..................................................................................................3

    C.   Plaintiffs' Class Allegations ...............................................................4

    D.   Plaintiff's Fraud Allegations ..............................................................5

IV.   LEGAL STANDARDS ....................................................................................5

V.   THE COMPLAINT SOLELY SEEKS TO ENFORCE THE *BROWN* SETTLEMENT AGREEMENT AND MUST BE DISMISSED WITH PREJUDICE ..................................................................................................6

VI.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ......................................................................7

    A.   Plaintiffs Fail to Adequately Allege a Breach of Contract Claim .........7

    B.   Plaintiffs Fail to Adequately Allege a Fraud Claim on Behalf of the Post-*Brown* Class ........................................................................11

VII.   MOTION TO STAY THE *WATERS* ACTION PENDING A DECISION IN *BROWN*.................................................................................................13

VIII.   CONCLUSION.............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ........................................................................... 6

*Ajetunmobi v. Clarion Mortg. Capital, Inc.*,
  595 F. App'x 680 (9th Cir. 2014) ...................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 5, 8

*Barrous v. BP P.L.C.*,
  No. 10-CV-2944-LHK, 2010 WL 4024774 (N.D. Cal. Oct. 13, 2010) ........................ 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 2, 5, 9

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ............................................................................ 11

*Brown, et al. v. Wal-Mart Stores, Inc., et al.*,
  No. 5:09-cv-03339-EJD ............................................................................ *passim*

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*,
  222 Cal.App.3d 1371 (1990) ............................................................................... 8

*Cavender v. Wells Fargo Bank*,
  No. 16-CV-00703-KAW, 2016 WL 4608234 (N.D. Cal. Sept. 6, 2016) ................... 12

*Clinton v. Jones*,
  520 U.S. 681 (1997) ........................................................................................ 13

*Decker v. GlenFed, Inc.*,
  42 F.3d 1541 (9th Cir. 1994) .............................................................................. 6

*Dumas v. Kipp*,
  90 F.3d 386 (9th Cir. 1996) ............................................................................... 6

*eCash Techs., Inc. v. Guagliardo*,
  127 F. Supp. 2d 1069 (C.D. Cal. 2000), *aff'd*, 35 F. App'x 498 (9th Cir. 2002) ....... 12

*Engalla v. Permanente Medical Group, Inc.*,
  15 Cal.4th 951 (1997) ...................................................................................... 11

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) (per curiam)................................................................5

*Fiorilli v. Wells Fargo Bank, N.A.*,
    No. C-14-CV-00557 (DMR), 2014 WL 3908612 (N.D. Cal. Aug. 7, 2014) (Ryu,
    J.)................................................................................................................................7

*Gomez v. Bayview Loan Servicing, LLC*,
    No. 3:14-CV-04004-CRB, 2015 WL 433669 (N.D. Cal. Feb. 2, 2015)....................13

*Gonzalez v. Wells Fargo Bank*,
    No. 5:12-CV-03842 EJD, 2012 WL 3627820 (N.D. Cal. Aug. 21, 2012) (Davila,
    J.).........................................................................................................................*passim*

*Green v. Bank of America*,
    512 Fed. Appx. 665 (9th Cir. 2013)........................................................................10

*Jenkins v. Commonwealth Land Title Ins. Co.*,
    95 F.3d 791 (9th Cir. 1996)....................................................................................12

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)....................................................................................6

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005)................................................................................13

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)..................................................................................6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008)..................................................................................5

*Murphy v. Wells Fargo Home Mortg.*,
    No. C 12-6228 SI, 2013 WL 4482671 (N.D. Cal. Aug. 19, 2013) (Illston, J.)............7

*Noll v. eBay, Inc.*,
    282 F.R.D. 462 (N.D. Cal. 2012)..............................................................................8

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001)....................................................................12

*Snapkeys, Ltd. v. Google LLC*,
    442 F. Supp. 3d 1196 (N.D. Cal. 2020)..................................................................6, 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)....................................................................................9

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 6, 11

*Williams v. Superior Court,*
    3 Cal.5th 531 (2017) ................................................................................................ 5

*Wool v. Tandem Computs., Inc.,*
    818 F.2d 1433 (9th Cir. 1987) ............................................................................... 13

**Statutes**

California Labor Code § 2699.3 ..................................................................................... 5

Private Attorneys General Act, Labor Code §§ 2698 *et seq.* ........................................ 1

Federal Rule of Civil Procedure 9(b) ............................................................ 1, 6, 11, 13

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 5, 6

Federal Rule of Civil Procedure 23 .............................................................................. 4

**Other Authorities**

CACI § 303 ...................................................................................................................... 8

CACI § 1900 ................................................................................................................... 11

CACI § 1901 ................................................................................................................... 11

Wage Order 7–2001 ..................................................................................................... 10

Wage Order 7-2001 § 14 .............................................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Complaint should be dismissed with prejudice because it inappropriately seeks to enforce a settlement agreement reached in another case, *Brown, et al. v. Wal-Mart Stores, Inc., et al.*, No. 5:09-cv-03339-EJD ("*Brown*")?  *See Gonzalez v. Wells Fargo Bank,* No. 5:12-CV-03842 EJD, 2012 WL 3627820, at *3 (N.D. Cal. Aug. 21, 2012) (Davila, J.).

2.   Whether the Complaint should be dismissed with prejudice for failure to state a claim for breach of contract under Federal Rule of Civil Procedure 12(b)(6)?

3.   Whether the Complaint should be dismissed with prejudice because it fails to state a claim for fraud with particularity as required under Federal Rule of Civil Procedure 9(b)?

4.   Whether, if the Complaint were not dismissed with prejudice, this Court should exercise its broad discretion to stay this action until the Court decides the Motion for Sanctions in *Brown*?

### II.   INTRODUCTION

Plaintiffs bring this action solely as a mechanism to challenge Walmart's compliance with a settlement agreement reached in another action, the enforcement of which is already being litigated in that other action.  Although these same Plaintiffs have already filed a motion for an order to show cause seeking sanctions in *Brown* claiming that Walmart violated the Settlement Agreement in that case by failing to properly implement the "Seating Program" contemplated therein (*Brown*, Dkt. 317), they bring this largely duplicative and procedurally improper action asserting claims for breach of contract and fraud based on the same allegations.  Plaintiffs do not, and could not, bring a separate action under the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq.*, to challenge Walmart's compliance with seating requirements because Walmart's compliance with the terms of the *Brown* Settlement Agreement constitutes Walmart's full compliance with PAGA, and, in any event, Plaintiffs have not exhausted all remedies.  This Court has correctly dismissed with prejudice actions, like this one, in which a plaintiff "intends to transform th[e] case into one seeking

to enforce a settlement agreement in another case," reasoning that those claims are "appropriately addressed" in that other case. *Gonzalez v. Wells Fargo Bank,* No. 5:12-CV-03842 EJD, 2012 WL 3627820, at *3 (N.D. Cal. Aug. 21, 2012) (Davila, J.).  The Court can thus grant the motion to dismiss Plaintiffs' Complaint with prejudice on this ground alone, without even needing to reach Plaintiffs' failure to state a claim for relief.

Compounding this threshold failing, however, Plaintiffs' Complaint must also be dismissed because Plaintiffs cannot plausibly allege either a breach of contract or fraud claim against Walmart.  *First*, Plaintiffs' conclusory allegations regarding Walmart's purported breach of contract must be disregarded on a motion to dismiss, and their factual allegations, even if true, do not constitute a breach of Walmart's obligations under the *Brown* Settlement Agreement.  *Second*, Plaintiffs fail to identify what was allegedly concealed from them or misrepresented to them by Walmart, much less plead with particularity all of the necessary elements of a fraud claim.  Because Plaintiffs' Complaint is fatally flawed and incurable by amendment, it should be dismissed with prejudice.  At the very least, this action should be stayed pending a determination of Plaintiffs' motion in *Brown*, which is where such a challenge should have originated in the first place.

## III.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   The *Brown* Class Action and Settlement Agreement

On June 11, 2009, Plaintiffs Nisha Brown and Kathy Williamson filed a putative class action in the Superior Court of California in Alameda County, asserting a single cause of action under PAGA, arising from Walmart's alleged failure to provide seating to its front-end cashiers. (Compl. at ¶ 11.)  The case was removed to this Court, and on August 24, 2012, this Court certified the *Brown* class as consisting of all persons who were employed by Walmart in the state of California as front-end cashiers from June 11, 2008 onward.[2]  (*Id.* at ¶ 12.)

---

[1] Defendants do not admit the truth of the allegations in the Complaint but take them to be true for purposes of this Motion only.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[2] The class certified for settlement purposes ends on December 6, 2018.  (Compl. ¶ 32.)

On March 28, 2019 this Court granted final approval of the *Brown* Settlement Agreement. (*Id.* at ¶ 12.)  As part of the Settlement Agreement, Walmart agreed to a "Seating Program," whereby it would "provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands." (*Id.* Ex. 1 at ¶ 5.1.1.)  The Settlement Agreement also acknowledged that Walmart's implementation of the Seating Program constitutes full compliance with its seating obligations under PAGA.  (*Id.* Ex. 1 at ¶ 5.1.8.)

Notably, the Seating Program does not require Walmart to place seats at all front-end cashier stations.  It does not require all front-end cashiers to use seats.  Seats need not be stored in public view or even at the front-end of the store.  And there is no requirement that seats be otherwise available except upon request.  On the contrary, the Agreement makes clear that the Seating Program contemplates that front-end cashiers who choose to use a seat must first request that Walmart provide one.  (*See id.* at ¶ 5.1.2 ("Notice(s) provided pursuant to this Section 5.1.2 shall inform cashiers . . .(ii) how to obtain a seat, [and] (iii) that they will not be retaliated against for *requesting* or using a seat . . . .") (emphasis added).)

**B.**      **Plaintiffs' Allegations of Breach of Settlement Agreement in *Brown***

Plaintiffs' breach of contract claim alleges six breaches of the Settlement Agreement, including failing to provide front-end cashiers with suitable seats, imposing additional burdens to obtain seats, failing to furnish notice of the Seating Program, failing to provide an adequate number of seats, denying seats to front-end cashiers who requested them, and failing to provide requisite notice of changes to and/or termination of the Seating Program.  (Compl. ¶ 48.)

Plaintiffs, however, do not allege that any of the Plaintiffs, at any time, wanted a seat, asked for a seat, or were denied a seat—much less after the Settlement Agreement, and the Seating Program therein, went into effect.  Apart from one single conclusory allegation, Plaintiffs do not allege that Walmart has terminated the Seating Program, nor do they allege any instances in which a front-end cashier who requested a seat was denied one.

Rather, in support of the alleged breaches of the Settlement Agreement, Plaintiffs present purported statistical evidence from "a recent survey of a randomized sample of Walmart's California stores," showing that the majority of Walmart associates observed working at front-end checkstands were standing, and just a few available seats were visible.  (*Id.* at ¶¶ 27-29.)  Plaintiffs, however, present no allegations purporting to show whether the workers who were observed standing were front-end cashiers covered by the Seating Program, whether they desired a seat, or whether they requested and were denied one.  Plaintiffs also make the vague allegation that "store managers continue to require that cashiers provide a note from a doctor in order to receive a seat or use that seat."  (*Id.* at ¶ 29.)  Yet, they allege no facts indicating when this purportedly happened and to whom, including whether this allegedly occurred before or after the Seating Program went into effect and whether the cashiers who were allegedly required to provide a doctor's note were front-end cashiers covered by the Seating Program.

**C.    Plaintiffs' Class Allegations**

Plaintiffs define an overall putative class consisting of "all those individuals who were employed by Walmart Inc. (formerly Wal-Mart Stores, Inc.) in the position of Front-End Cashier in California at any time between July 11, 2008 and the present."  (*Id.* at ¶ 32.)  Plaintiffs distinguish between two subsets of the class: (1) the *Brown* class which consists of "all persons employed between July 11, 2008 and December 6, 2018 as Front-End Cashiers in California," and (2) the post-*Brown* subclass which consists of "all individuals who worked as Front-End Cashiers in California between December 7, 2018 through the date of trial."  (*Id.*)  As set forth in Walmart's concurrently filed Motion to Strike, the proposed class is overly broad, as it consists of class members who suffered no injury, and, even if properly narrowed, the class does not meet the requirements of Federal Rule of Civil Procedure 23.[3]  Thus, even if this case could proceed—which

---

[3] As explained in the accompanying Motion to Strike, a cognizable class in this case can *only* consist of front-end cashiers who (1) who were working as front-end cashiers after the Seating Program was implemented, and (2) who were injured in that they asked for, but were not provided, a seat.  *See generally,* Motion to Strike.

1  it should not—it cannot proceed as a class action as defined in the Complaint.

2      **D.**    **Plaintiff's Fraud Allegations**

3      Plaintiffs allege generally that Walmart's counsel misled them through "written

4  misrepresentations" in the *Brown* action.  (Compl. ¶ 55.)  In support of these allegations, they point

5  to a single representation by Walmart, contained in a July 11, 2019 status report in *Brown* that the

6  required notice had been provided and that seats had been made available at all Walmart retail

7  locations.  (*Id.* at ¶ 56.)  Plaintiffs claim, with no supporting factual allegations, that this

8  representation was false and constitutes concealment and fraudulent misrepresentation because

9  Walmart "never intended to implement or maintain the Seating Program." (*Id.* at ¶ 24.)  Notably,

10  Plaintiffs do not allege a violation of PAGA (nor could they, as there has been no PAGA violation).

11  And in any event, Plaintiffs would have been required to exhaust all remedies, which they did not

12  do.  California Labor Code § 2699.3; *Williams v. Superior Court*, 3 Cal.5th 531, 545-46 (2017)

13  (explaining exhaustion requirements).

14  **IV.**    **LEGAL STANDARDS**

15      Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

16  action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

17  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

18  pleads factual content that allows the court to draw the reasonable inference that the defendant is

19  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions

20  may "provide the framework of a complaint, but they must be supported by factual allegations."  *Id.*

21  at 679.  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in

22  the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

23  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

24      The Court, however, need not "assume the truth of legal conclusions merely because they

25  are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)

26  (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and

27

28

1   unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d

2   1179, 1183 (9th Cir. 2004).

3   Where, as here with respect to the *Brown* Settlement Agreement, "plaintiff refers

4   extensively to [a] document or the document forms the basis of the plaintiff's claim," the document

5   is properly considered along with the allegations in the complaint on a motion to dismiss. *Khoja v.*

6   *Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*,

7   342 F.3d 903, 907 (9th Cir. 2003)); *see also Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196,

8   1202 (N.D. Cal. 2020) (incorporation of non-disclosure agreement in breach of contract complaint).

9   Pursuant to Rule 9(b), when an allegation involves fraud, a heightened pleading standard

10   applies, and a plaintiff "must state with particularity the circumstances constituting fraud."

11   Fed.R.Civ.P. 9(b).  The complaint must identify "the who, what, when, where, and how" of the

12   fraud alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also*

13   *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994).  "A motion to dismiss a complaint

14   or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional

15   equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess*, 317 F.3d

16   at 1107.

17   If dismissal is granted under either Rule 12(b)(6) or 9(b), leave to amend need not be

18   allowed if the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*,

19   203 F.3d 1122, 1130 (9th Cir. 2000); *Vess*, 317 F.3d at 1108.  If amendment would be futile, a

20   dismissal with prejudice is proper. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

21   **V.   THE COMPLAINT SOLELY SEEKS TO ENFORCE THE *BROWN* SETTLEMENT**

22   **AGREEMENT AND MUST BE DISMISSED WITH PREJUDICE**

23   It is well-settled that a complaint seeking to enforce a settlement agreement from another

24   action is procedurally improper and must be dismissed without leave to amend. *Gonzalez*, 2012

25   WL 3627820, at *3 ("an entirely separate and independent civil action like this one is not the proper

26   process by which a settlement agreement from another action is enforced") (Davila, J.); *see also*

27

28

*Fiorilli v. Wells Fargo Bank, N.A.*, No. C-14-CV-00557 (DMR), 2014 WL 3908612, at *3 (N.D. Cal. Aug. 7, 2014) (dismissing claim for breach of class action settlement agreement which "may be brought as a motion for relief in the Class Action") (Ryu, J.); *Murphy v. Wells Fargo Home Mortg.*, No. C 12-6228 SI, 2013 WL 4482671, at *7 (N.D. Cal. Aug. 19, 2013) (dismissing without leave to amend putative class action complaints claiming breach of settlement agreement in other class action) (Illston, J.).

In *Gonzalez*, this Court denied leave to amend a complaint, where the plaintiff, through proposed amendments, "intend[ed] to transform th[e] case into one seeking to enforce a settlement agreement in another case." 2012 WL 3627820, at *3. Because a court had "retained continuing jurisdiction to enforce and interpret the settlement agreement in that [other] case," the Court held that the plaintiff's claims were "appropriately addressed" in that other case. *Id.* Here, as in *Gonzalez*, Plaintiffs seek to challenge Walmart's compliance with a settlement agreement in another case, *Brown*. And as in *Gonzalez*, a court—in fact, this very Court—expressly retained jurisdiction over the *Brown* case (Compl. ¶5) and can enforce and interpret the Settlement Agreement in that action. Plaintiffs' attempt to file a separate lawsuit for challenging compliance with the *Brown* Settlement Agreement is procedurally improper. To allow this action to proceed would create undue burdens on this Court and the parties and would present the risk of inconsistent rulings. The Court need go no further to dismiss the Complaint with prejudice.

## VI.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In addition to being procedurally improper, Plaintiffs' Complaint should be dismissed for the independent reason that Plaintiffs have failed to state a claim for relief as to either of their causes of action.

### A.   Plaintiffs Fail to Adequately Allege a Breach of Contract Claim

Under California law, to state a claim for breach of contract, a plaintiff must plead facts establishing "the existence of a contract, the plaintiff's performance of duties or excuse for non-

performance, the defendant's breach, and the resulting damages to the plaintiff." *Noll v. eBay, Inc*., 282 F.R.D. 462, 466 (N.D. Cal. 2012) (citing *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)); *see also Careau & Co. v. Security Pac. Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1389 (1990) (listing elements); CACI § 303. "A court may resolve contractual claims on a motion to dismiss" where, as here, "the terms of the contract are unambiguous." *Barrous v. BP P.L.C.*, No. 10-CV-2944-LHK, 2010 WL 4024774, at *4 (N.D. Cal. Oct. 13, 2010) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).

The *Brown* Settlement Agreement, which is incorporated by reference into the Complaint, *see Snapkeys*, 442 F. Supp. 3d at 1202, obligates Walmart to (1) "provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands," (2) give notice of this Seating Program within 20 days of the finalization of the agreement and (3) implement the Seating Program within 90 days of such notice.[4]  (Ex. 1 at 6, ¶5.1.1.)  Apart from the conclusory allegations in paragraph 48 of the Complaint, which are insufficient to defeat a motion to dismiss, *see Iqbal*, 556 U.S. at 678-80, the Complaint does not plausibly allege that Walmart breached any of these obligations.

As an initial matter, none of the Plaintiffs allege that Walmart failed to comply with any of its obligations *to Plaintiffs* under the Settlement Agreement.  Specifically, Plaintiffs do not allege that Walmart failed to provide them notice of the Seating Program.  In fact, the Complaint acknowledges that notice may have been provided.  (*See* Compl. at ¶ 54 ("To the extent that any of Walmart's California employees received actual notice regarding any change in policy . . .").)[5] Plaintiffs also do not allege that any of them, at any time while working as a front-end cashier

---

[4] The Settlement Agreement also requires that Walmart provide notice if it decides to terminate the Seating Program. (Ex. 1 at ¶ 5.1.6.)  Because Plaintiffs make no allegation that Walmart has terminated the Seating Program—and because Plaintiffs' visual survey of Walmart stores, where some front-end cashiers were observed using a seat, shows it is still in effect—Walmart does not address this obligation in the Motion.

[5] As shown in *Brown*, those Plaintiffs who were covered by the Seating Program did, in fact, receive notices.  *See Brown*, Dkt. No. 317, at 9-11.

covered by the Seating Program, chose to use a seat while working at a front-end checkstand, asked for a seat, or were denied a seat—much less after the Settlement Agreement, and the Seating Program therein, went into effect.  Without any such supporting factual allegations, Plaintiffs' conclusory allegations of breach are insufficient to survive a dismissal motion.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

The only factual allegations in support of Plaintiffs' claim for breach of contract are based on purported "statistical" evidence gathered through a visual survey by private investigators of a selection of Walmart stores, which allegedly showed that the majority of front-end cashiers observed were standing and few empty seats were visible.  (Compl. ¶¶ 27-29.)  The Complaint asserts that these results indicate "the majority of front-end cashiers [are] still being required to stand during their shifts," which Plaintiffs allege would constitute a breach of Walmart's obligation to provide cashiers with seats if they choose to use them.  (*Id.* at ¶ 27.)

Even taking these allegations as true, however, they would not establish a breach of the Settlement Agreement because the agreement *does not require* that all front-end cashiers use seats, that Walmart place seats at all front-end cashier stations, or that Walmart store available seats in public view or at the front-end of the store when not in use.  The Complaint does not allege that the front-end cashiers who were observed standing desired a seat—much less that any of them had requested and were denied one.  Plaintiffs' survey showing few seated front-end cashiers and few other visible empty seats thus simply does not support a plausible claim that Walmart breached the Settlement Agreement.

Finally, Plaintiffs' vague allegation that "store managers continue to require that *cashiers* provide a note from a doctor in order to receive a seat and use that seat" is another conclusory allegation not supported by any specific factual allegations.  (*Id.* at ¶ 30 (emphasis added).)

1   Moreover, even accepted as true, the allegation does not establish a breach because Plaintiffs do not

2   allege that the alleged doctor's note requirement is being imposed on *front-end* cashiers—as

3   opposed to workers in other job titles—who choose to use a seat while working at front-end

4   checkstands, which is what the Settlement Agreement requires.

5        Although the Complaint, at times, characterizes Walmart's obligations under the *Brown*

6   Settlement Agreement to mean that a certain number of seats have to be available at a certain

7   number of checkstands (Compl. at ¶ 20), the Settlement Agreement contains no such requirement.

8   (Ex. 1 at ¶ 5.1.1.)  Instead, it requires Walmart to furnish a seat upon the *request* of a front-end

9   cashier, so that a front-end cashier who chooses to use a seat while working at a checkstand is given

10  one.  (*See id.* at ¶ 5.1.2 (front-end cashiers "will not be retaliated against for *requesting* or using a

11  seat") (emphasis added).)

12       Plaintiffs do not assert a claim for violation of PAGA, but even to the extent that Plaintiffs

13  allege that Walmart has violated the California Labor Code, such allegations are irrelevant to

14  Plaintiffs' claim for breach of the *Settlement Agreement*, which is the claim they have asserted.

15  Plaintiffs themselves acknowledge that the Settlement Agreement "comport[s] with the Wage

16  Order."  (Compl. ¶ 20 (citing *Green v. Bank of America*, 512 Fed. Appx. 665 (9th Cir. 2013); *see*

17  *also* Ex. 1 at ¶ 5.1.8 (acknowledging that compliance with obligations under Settlement Agreement

18  constitutes compliance with suitable seating law).).  In any event, Plaintiffs' characterization of the

19  requirements of Wage Order 7–2001 is unsupported by the case law on which they rely.  Plaintiffs

20  cite the unpublished decision in *Green v. Bank of America*, for the proposition that Walmart has to

21  provide seating before any such seating is even requested.  512 Fed.Appx. 665 (9th Cir. 2013).  But

22  this non-precedential decision simply observed that the text of Wage Order 7-2001 § 14 does not

23  itself impose "a requirement . . . that employees must request seating before it is offered."  *Id*. at

24  666.  In other words, Wage Order 7-2001 does not require a request be made before seating can be

25  provided, but neither does it require seating be provided before a request.

26

27

28

Because Plaintiffs have failed to allege facts that would constitute a breach of the Settlement Agreement, Plaintiffs' breach of contract claim should be dismissed with prejudice.

## B.   Plaintiffs Fail to Adequately Allege a Fraud Claim on Behalf of the Post-*Brown* Class

Plaintiffs also fail to state their fraud claim on behalf of the proposed "post-*Brown* class" of front-end cashiers.  "The elements of fraud" are: (a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974 (1997) (internal quotation omitted); *see also* CACI § 1900.  The elements for fraudulent concealment are: (1) the defendant "concealed or suppressed a material fact," (2) the defendant was "under a duty to disclose the fact to the plaintiff," (3) the defendant concealed the fact with the "intent to defraud the plaintiff," (4) the plaintiff was "unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact," and (5) "as a result of the concealment . . .the plaintiff . . . sustained damage." *Boschma v. Home Loan Ctr., Inc*., 198 Cal. App. 4th 230, 248 (2011); *see also* CACI § 1901.  In addition, as set forth above, Rule 9(b) requires that the facts constituting each element of a fraud claim be pled with specificity.  *Vess*, 317 F.3d at 1106.

Plaintiffs have failed to allege the reliance, falsity, and intent elements of fraud, and their Complaint generally fails to plead fraud with particularity.  The sole misrepresentation alleged in the Complaint is that:

> [in] a Status Report that Greenberg Traurig attorneys signed and filed in the *Brown* action on July 11, 2019. . . they wrote: 'Defendant further states that it is implementing the Seating Program in accordance with Section 5.1 of the Settlement Agreement.  Notice of the Seating Program was provided as required within 20 days of the Settlement Effective Date, and seats have been made available at all California Walmart retail locations.'

(Compl. ¶ 56.)  Plaintiffs assert that this representation was false because Walmart "never intended to implement or maintain the Seating Program."  (*Id.* at ¶ 24.)  These allegations are insufficient to

1 state a claim.

2      A plaintiff in an action for fraud must show that "the defendant made a false representation

3 as to a past or existing material fact." *Cavender v. Wells Fargo Bank*, No. 16-CV-00703-KAW,

4 2016 WL 4608234, at *4 (N.D. Cal. Sept. 6, 2016); *see also Jenkins v. Commonwealth Land Title*

5 *Ins. Co.,* 95 F.3d 791, 796 (9th Cir. 1996) ("[t]he statement in question must be false to be

6 fraudulent"). In other words, "the plaintiff must plead facts explaining *why* the statement was false

7 when it was made." *Smith v. Allstate Ins. Co*., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001)

8 (emphasis added). Here, as set forth above in Section VI.A, Plaintiffs have not plausibly alleged

9 that Walmart failed to provide notice or implement the Seating Program just as it represented in the

10 Status Report.[6]

11      Plaintiffs also do not allege that any of the proposed post-*Brown* class members did

12 anything in reliance on the representation made in the Status Report. Instead, Plaintiffs state that

13 the representation "caused a general belief among Walmart California front-end cashiers that they

14 1) were not entitled to a use of a seat while performing their checkout duties; and 2) that while on

15 duty, but experiencing a lull in their workflow, the use of a seat nearby." (Compl. ¶ 57.) But many

16 members of the proposed post-*Brown* class (defined as those front-end cashiers "who worked as

17 Front-End Cashiers in California between December 7, 2018 through the date of trial"), did not

18 even yet work at Walmart as front-end cashiers when the status report was filed, and thus could not

19 have relied on it. The vague and conclusory allegation that this representation caused a "general

20 belief" among front-end cashier is thus insufficient to establish the reliance element. *eCash Techs.,*

21 *Inc. v. Guagliardo,* 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000), *aff'd,* 35 F. App'x 498 (9th Cir.

22 2002) ("conclusory legal allegations cast in the form of factual allegations" are properly

23 disregarded). It is also insufficient to satisfy the elements of harm and causation, as the Complaint

24

25     [6] Indeed, as demonstrated in Walmart's Opposition to Plaintiffs' Motion for Sanctions in the *Brown*
26 matter, Walmart began implementing the Seating Program—providing notice to front-end cashiers
of the availability of seating and explaining how to obtain one—even before it was required to do
27 so under the Settlement Agreement. (*See Brown*, Dkt. No. 317, (Mitchell Decl. at ¶ 2).)

28

1   contains no allegation that any putative post-*Brown* class members changed their position in

2   reliance on the statement or even suffered harm by being denied a seat that they wanted and

3   requested. *Gomez v. Bayview Loan Servicing, LLC,* No. 3:14-CV-04004-CRB, 2015 WL 433669,

4   at *6 (N.D. Cal. Feb. 2, 2015) (where plaintiff's vague allegations "state no link between the

5   alleged misrepresentations and any harm that Gomez allegedly suffered in the chain of events . . .

6   Gomez fail[ed] to plead with sufficient particularity any reliance, never mind any proximate

7   causation between that reliance and Gomez's detriment").

8        Plaintiffs say that it takes "brass" for Walmart to "ignore a federal court judgment."

9   (Compl. ¶ 24.)  It takes far more brass to bring a fraud claim so nonchalantly without any factual

10   support whatsoever.  Fraud cannot be pleaded in generalities.  Fed. R. Civ. P. 9(b).  Because

11   Plaintiffs fail to articulate—much less articulate with particularity—a claim for fraud, their claim is

12   appropriate for dismissal.  *See e.g., Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680,

13   682-83 (9th Cir. 2014) (upholding dismissal of fraudulent misrepresentation and fraudulent

14   concealment claims for failure to plead with particularity); *Wool v. Tandem Computs., Inc*., 818

15   F.2d 1433, 1439 (9th Cir. 1987) (fraud claim should be dismissed if the plaintiff fails to plead it

16   with sufficient particularity).

17   **VII.**    **MOTION TO STAY THE *WATERS* ACTION PENDING A DECISION IN *BROWN***

18        At the very least, Walmart respectfully request that the Court issue a stay pending a decision

19   in *Brown*.  District courts maintain "broad discretion to stay proceedings as an incident to [their]

20   power to control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v.*

21   *North American Co*., 299 U.S. 248, 254 (1936)).  In determining whether to grant a motion to stay,

22   a court should consider:

23   > [T]he possible damage which may result from the granting of a stay, the hardship or
24   > inequity which a party may suffer in being required to go forward, and the orderly course of
   > justice measured in terms of the simplifying or complicating of issues, proof, and questions
25   > of law which could be expected to result from a stay.

26   *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

27

28

Here, Plaintiffs would suffer no hardship or inequity if the Court grants a stay.  To the contrary, as set forth above, the appropriate recourse for challenging Walmart's compliance with the *Brown* Settlement Agreement lies in the action in which the agreement was entered and the court retained authority, which is where Plaintiffs already brought a motion for an order to show cause based on the same allegations in their Complaint and Walmart has already opposed that motion.  *See Gonzalez*, 2012 WL 3627820, at *3.  On the other hand, if the Court does not grant a stay, Walmart will be forced to litigate the same challenge to its compliance with the *Brown* Settlement Agreement in two largely duplicative but separate actions.  Importantly, in the *Brown* action, where these allegations are required to be brought, Walmart has already submitted evidence disproving the unfounded allegation raised in the Complaint.  Walmart should not be required to litigate a brand-new action testing allegations that it can (and has) readily disprove(d) through evidence, nor should it be required to submit to overbroad, oppressive discovery and pretrial motion practice when the issue can be decided without recourse to these burdensome tactics.  Plaintiffs' use of this action as a mechanism for challenging Walmart's compliance in *Brown* is not only procedurally improper and prejudicial to Walmart, but it also threatens to interfere with the Court's timely and expedient resolution of the issues.  All of these considerations, taken together, weigh in favor of staying the *Waters* action pending a determination in *Brown* in the event this action is not dismissed.

## VIII.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.  Alternatively, this action should be stayed while the Court determines the pending motion for an order to show cause in the *Brown* matter.

//

//

//

//

Dated:  October 1, 2020

Respectfully Submitted,

KING & SPALDING LLP

By: */s/ Quyen L. Ta*
       Quyen L. Ta

QUYEN L. TA (Bar No. 229956)
qta@kslaw.com
KELLY PERIGOE (Bar No. 268872)
kperigoe@kslaw.com
JEANNE A. FUGATE (Bar No. 236341)
jfugate@kslaw.com
101 Second Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Attorneys for Defendant WALMART INC.